Charles Spicer and Mabell Spicer, Husband and Wife v. Commissioner.
Spicer v. Commissioner
Docket No. 32735.
United States Tax Court
T.C. Memo 1954-34; 1954 Tax Ct. Memo LEXIS 212; 13 T.C.M. (CCH) 452; T.C.M. (RIA) 54139; May 11, 1954, Filed Carl T. Smith, Esq., for the petitioners. David Karsted, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined a deficiency in the income tax of the petitioners for 1947 in the amount of $3,678.33. The issue presented is the correctness of the respondent's action in determining that compensation received by the petitioners should be reduced by a legal fee paid in 1947 to collect the compensation before allocation of the compensation is made to prior years under section 107 of the Internal Revenue Code. Another issue raised by the pleadings has been conceded by the petitioners. Findings of Fact Charles Spicer resided with his wife, Mabell Spicer, in Hazelton, Kansas, during 1947. They filed a joint Federal income tax *213 return for 1947 with the collector for the district of Kansas. For about ten years prior to 1920 the petitioners had been friends of M. C. Cavanaugh and Lillie Cavanaugh, his wife. M. C. Cavanaugh was a banker in Hazelton, Kansas, and was assisted by his wife in the management of the bank. They also owned several farms in the nearby area which were rented to tenant farmers. The petitioners had often helped the Cavanaughs in the management of their farms by visiting the tenants and checking to see if the grain was properly divided in accordance with the rental agreements. They had also performed small repair jobs at the bank. They would drive the Cavanaughs to the bank and take them home, as M. C. Cavanaugh was not able to drive. Petitioner's wife would stay with Lillie Cavanaugh whenever she was sick and would take her back and forth to the hospital when it was necessary to go there for examinations. In 1920 the petitioners rented a 560 acre farm in Barber County, Kansas, from M. C. Cavanaugh. The farm was about one-half mile east and one-half mile north of Hazelton. The yearly rental for the farm was one-third of the wheat raised thereon delivered to the elevator and $300 in cash *214 for the use of the improvements and the grass land. In 1938 the petitioners visited California. Upon their return on May 13, 1938, they called on the Cavanaughs at their bank. M. C. Cavanaugh was then 76 years old and his wife was 74 years old. During the course of the conversation, Lillie Cavanaugh told the petitioners that they had missed them while they were in California and that she and her husband had agreed to give Charles Spicer on their death the 560 acre farm which he was renting and to give some cash to Mabell Spicer if they, petitioners, would continue to take care of them in the manner that they had previously cared for them. The petitioners accepted the offer. Mabell Spicer stayed at the Cavanaughs' home and personally rendered nursing services to Lillie Cavanaugh when she was sick. Both petitioners continually rendered many services to the Cavanaughs after they accepted the offer. Lillie Cavanaugh broke her hip and was in the hospital from September 1943 to February 6, 1944. During that time M. C. Cavanaugh was mentally ill and resided with the Spicers at their home. Because of M. C. Cavanaugh's condition, Charles Spicer had to stay with him day and night and keep *215 him confined to his bedroom. M. C. Cavanaugh was adjudged incompetent in March 1944 and Charles Spicer was named his guardian at the request of Lillie Cavanaugh. In July 1944 M. C. Cavanaugh died. Charles Spicer was appointed administrator of his estate at the request of Lillie Cavanaugh. No fees were paid to Charles Spicer for his guardianship services. The probate court having jurisdiction of M. C. Cavanaugh's estate allowed Charles Spicer an administrator's fee of $7,500. In payment of such allowance, Charles Spicer received in 1944 $4,900 in cash and a promissory note executed by his brother, payable to the order of the Cavanaughs' bank in the amount of $2,500. When Lillie Cavanaugh was released from the hospital she was an invalid. The petitioners moved her to the farm in order that they might care for her properly. Shortly after M. C. Cavanaugh died, Lillie Cavanaugh drew a will, which was shown to Charles Spicer. The will provided that the 560 acre farm would be left to him and also contained a bequest of $5,000 to Mabell Spicer. The petitioners supplied Lillie Cavanaugh with her meals, gave her baths, carried her to the bathroom, moved her to and from the hospital, and *216 otherwise cared for her as they had agreed. Lillie Cavanaugh returned to the hospital on April 21, 1947, and died there June 22, 1947. After Lillie Cavanaugh's death it was discovered that she had executed another will. The later will which was admitted to probate revoked the first will and omitted any devise or bequest to the petitioners. Thereupon the petitioners employed an attorney. Charles Spicer filed a petition in the appropriate probate court titled "Petition for Allowance of Demand and Enforcement of Contract." Charles Spicer and Mabell Spicer filed an additional petition titled "Application for Allowance of Claim." In the "Petition for Allowance of Demand and Enforcement of Contract," Charles Spicer alleged the facts with regard to the agreement between petitioners and M. C. and Lillie Cavanaugh and prayed for an order of the court decreeing him to be the owner of the farm and allowing a claim for $5,000 as provided in the aforementioned revoked will of Lillie Cavanaugh. The order of the probate court with respect to the Petition and Application, filed November 21, 1947, provided, inter alia, as follows: "1. That said Petition of Charles M. Spicer and said Application *217 of Charles M. Spicer and Mabell Spicer for payment in money for services or otherwise, are denied and disallowed except that, in full payment and satisfaction of both said Petition and said Application for payment in money for services or otherwise, Charles W. [M.] Spicer and Mabell Spicer are jointly allowed the total and aggregate sum of Five Thousand Dollars ($5,000.00); "2. That said Petition of Charles M. Spicer, presenting among other things a claim to the farm hereinafter described for services, improvements and otherwise, is allowed as to the farm, but otherwise denied and disallowed. "3. That otherwise said Petition of Charles M. Spicer and said Application of Charles M. Spicer and Mabell Spicer be and they are hereby denied and disallowed. "4. * * * the Executors under the last will and testament of Lillie E. Cavanaugh, deceased, are ordered and directed, in accordance with the adjudications and findings hereinbefore made, (1) to pay to Charles M. Spicer and Mabell Spicer jointly the aggregate sum of $5,000.00, without interest, and (2) to execute and deliver to said Charles M. Spicer (after it has been submitted and approved by this court) a deed conveying to him *218 all the rights, title and interest of the deceased, Lillie E. Cavanaugh, in and to the following described farm * * *" The fair market value of the farm received by the petitioners in 1947 was $24,000. The legal fee for the litigation in the probate court, which was paid by petitioners during 1947, was $15,000. The petitioners elected to report their income received for caring for the Cavanaughs under the provisions of section 107 of the Internal Revenue Code. In their return for 1947 they allocated the entire amount received, i.e., $29,000, over the period beginning May 13, 1938, with the result that $901.89 was allocated to 1947. The full amount of the legal fee of $15,000 was then deducted in full in 1947, together with other expenses incurred in caring for Lillie Cavanaugh, so that a net loss of $14,257.61 was reported under Schedule E. The respondent, in determining the deficiency, held that the legal fee paid in 1947, in the amount of $15,000, should be allocated over each of the years 1938 to 1947, inclusive, in proportion to the amount of the long-term compensation applicable to each of such years. Opinion Both parties agree that the compensation *219 received by the petitioners for their personal services is to be treated as provided in section 107(a) of the Internal Revenue Code. [1] The sole issue presented is whether the legal fee paid by petitioners in 1947 is deductible in its entirety in that year, as petitioners contend, or whether the legal fee should be offset against the compensation and only the net amount of compensation remaining allocated to the prior years, as respondent contends. *220 The respondent is aware of our decision in Weldon D. Smith, 17 T.C. 135, 144, revd. on another issue (C.A. 2, 1953) 203 Fed. (2d) 310. In the Smith case the petitioner paid $25,000 during 1945 as a legal fee incurred in the settlement and collection of $212,000 back pay. We there held that the entire amount of a legal fee paid to collect back pay was deductible in the year paid. Respondent contends that the case was incorrectly decided and that we should reconsider our position. He argues that since section 107 of the Code permits the taxpayer to allocate the compensation earned to the applicable years, Congress must have intended that the expenses incurred in gaining the compensation should also be so allocated. We said in the Smith case in referring to back pay the following: "Back pay is afforded the treatment of allocation to applicable years simply because of the existence of section 107 of the Code. Without this section, the entire $212,000 would be income in 1945. Section 107 is silent as to expenses incurred in connection with any collection of back pay, and there are no regulations nor decisions which we have been able to find on the question. *221 To limit application of section 107 to amounts received less expenses connected with collection is not a function for the Court, but rather is a task for the Congress if that is the result which they wish. * * *" What we said in regard to expenses incurred in connection with the collection of back pay is also applicable to the expenses incurred in connection with the collection of the compensation received by the present petitioners. We have carefully reviewed our decision in the Smith case, but can find no basis in the statute for sustaining the respondent's contention. We, therefore, will continue to follow our opinion in the Smith case and we therefore hold that petitioners are entitled to deduct the $15,000 legal fee in 1947. Decision will be entered under Rule 50. Footnotes
1. SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE AND BACK PAY. (a) Personal Services. - If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual.↩